## Eleanor (Brown) Scott v. Albert W. Scott

[586 A.2d 1140]

No. 90-123

Present: Allen, C.J., Gibson, Dooley and Morse, JJ., and Peck, J. (Ret.), Specially Assigned

Opinion Filed December 21, 1990

*William M. McCarty, Jr.,* and *Cynthia Burns* (On the Brief) of *McCarty Law Offices,* Brattleboro, for Plaintiff-Appellee.

*Thomas W. Costello,* Brattleboro, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals from the order of the Windham Superior Court granting plaintiff a divorce on the grounds that she had lived separate and apart from defendant for six consecutive months and that the resumption of marital relations was not reasonably probable. He also appeals the distribution of the marital assets and the award of maintenance to the plaintiff. We reverse.

## I.

Defendant first contends that the trial court's finding that "plaintiff and defendant have lived separately and apart from each other in excess of six consecutive months" was not supported by the evidence. In response to defendant's similar argument at trial, the court stated in its opinion that "the parties have not had marital relations for fifteen years and that this emotional interrelationship terminated well over six months ago."

The background facts material to this issue disclose that the parties were married on May 27, 1967, and had resided together in the same home until September 20, 1989, when, pursuant to a temporary order, the court awarded possession of the marital residence to plaintiff. Plaintiff then moved for an expedited hearing on the merits because she had been diagnosed as being terminally ill with cancer. This motion was granted, and the hearing was held on February 8, 1990. Plaintiff had initially

filed for divorce by alleging an anticipatory separation, meaning that by the time of the final hearing the six-month living apart period required by 15 V.S.A. § 551(7) would have occurred. At the hearing on the motion to expedite, plaintiff represented that she could establish grounds for divorce under § 551(7) notwithstanding that the parties had resided in the same dwelling for a portion of the required six months. She amended her complaint to reflect this representation, and the matter proceeded to final hearing before six months had elapsed from the date defendant moved from the house.

■ Defendant first argues that the statute in the context of grounds for a final divorce requires that the parties not have lived under the same roof for the requisite period. While we have not addressed this specific question, we have determined that for purposes of temporary orders in divorce matters, "separation of the parties" as used in 15 V.S.A. § 594a does not mean that one of the parties must have vacated the house. Rather, "[c]ontinued residence in the same dwelling is but one factor to be considered with others in determining the nature of the relationship between the parties." *Buxton v. Buxton*, 148 Vt. 22, 25, 527 A.2d 660, 663 (1987). We believe that this rationale should apply in determining whether parties have lived apart under § 551(7). As observed in *Boyce v. Boyce*, 153 F.2d 229, 230 (D.C. Cir. 1946), the "essential thing is not separate roofs, but separate lives," and in *Heckman v. Heckman*, 245 A.2d 550, 551 (Del. 1968), "a couple may live separate and apart even under the same roof." While courts from other jurisdictions have concluded that the fact that the parties have continued to live under the same roof precludes a finding that they have lived apart, *Oxford v. Oxford*, 237 Ark. 384, 385, 373 S.W.2d 707, 708 (1963); *Lillis v. Lillis*, 235 Md. 490, 494–96, 201 A.2d 794, 796–97 (1964), we are inclined to the views expressed in *Boyce* and *Heckman*, dealing with final orders under similar statutes and cited with approval in *Buxton*.

Defendant further contends that even assuming that parties living under the same roof may be deemed to be living apart for § 551(7) purposes, the evidence presented is not sufficient to support the finding that the parties did, in fact, live apart for the requisite six months. The court found, and the record supports, that the parties had not had marital relations for fifteen

years. This finding, however, does not address whether other elements of the marriage had been abandoned. Elements such as affection, solace, comfort, companionship, society and assistance, to name a few, might well exist, defeating the contention that the parties lived apart.

Plaintiff argues that the court's conclusion that "this emotional interrelationship terminated well over six months ago" is sufficient to meet the requirements of § 551(7). The evidence does not support the conclusion. While there was ample evidence that the relationship had deteriorated to the point where "the resumption of marital relations is not reasonably probable" within the meaning of § 551(7), there was not sufficient evidence to establish that the parties had lived apart for six months within the meaning of the statutory provision. Plaintiff testified that during the fifteen-year period in which she and defendant had not engaged in sexual relations, they slept in the same bed, watched T.V. together in the evenings, took walks together, and held out to others that they were husband and wife. There is nothing in the record to indicate that these activities ended before the divorce action was brought. While plaintiff complained that in the year before the separation defendant had made her life hell, would no longer take her out, and did as he pleased, this evidence was directed to the quality of the marriage. Their situation was much like that of the parties in *Ellam v. Ellam*, 132 N.J. Super. 358, 362–63, 333 A.2d 577, 579–80 (1975) (citations omitted), where the court observed:

> His plea that their social intercourse was strained and rife with arguments goes to the quality of their association, not its substance. . . . Thus, if the parties were not in fact living separate and apart as required by the statute, a mere finding that their relationship was bereft of positive qualities is insufficient.

Plaintiff must establish both elements of the statute before a divorce can be granted. *West v. West*, 115 Vt. 458, 459, 63 A.2d 864, 865 (1949). The failure to prove that the parties had lived apart for six consecutive months requires that the order terminating the marriage be reversed and that the matter be remanded for such a determination. The trial court is directed to hold a hearing on this question at the earliest possible date in light of the matters raised in the earlier motions to expedite.

## II.

■■ Defendant next challenges the trial court's award of maintenance to plaintiff. The trial court ordered defendant to pay maintenance in the form of medical health insurance for plaintiff until such time as plaintiff became eligible for Medicare. Failing this, the order required defendant to be responsible for plaintiff's medical expenses. Defendant asserts that the findings of fact on this issue are not supported by the evidence, and that the maintenance award is in turn not supported by the findings. Defendant bears a heavy burden on both parts of this challenge. For this Court to set aside the findings of fact, defendant must demonstrate that the findings are clearly erroneous. *Belanger v. Belanger*, 148 Vt. 202, 204, 531 A.2d 912, 914 (1987); *Burr v. Burr*, 148 Vt. 207, 210, 531 A.2d 915, 917 (1987). For this Court to set aside the maintenance award, defendant must demonstrate that the award was an abuse of discretion. *Naumann v. Kurz*, 152 Vt. 355, 357, 566 A.2d 1342, 1343 (1989); *McCrea v. McCrea*, 150 Vt. 204, 207, 552 A.2d 392, 394 (1988).

■ Defendant attacks as unsupported the trial court's finding that he is capable of earning $500 per month to supplement the $805 per month he receives in social security and retirement benefits. This finding is not clearly erroneous because: (1) his 1988 wage statements show he earned this much, (2) defendant testified that he was currently working ten to thirty hours per week, and (3) defendant admitted that he had made $3,000 to $3,500 that summer at another part-time job. Defendant contends that there is no evidence to support the necessary inferences that a job will remain available to him throughout the duration of the maintenance obligation, and that he will be physically able to continue working throughout the duration. In response, we note that acceptance of this contention, which in essence is no more than an argument that the future is uncertain, would make an award of maintenance impossible in every case. Further, the vagaries of the future have been adequately addressed by 15 V.S.A. § 758, which allows for modification of the maintenance award "upon a showing of a real, substantial, and unanticipated change of circumstances."

■ Defendant attacks as unsupported the finding that plaintiff's imputed rental income from the plaintiff's deceased

mother's home was $250 per month. This finding, however, was superseded by the trial court's amended finding that plaintiff's imputed income from the home was 7% interest per annum on its value of $175,000. Defendant also contests this interest rate. Defendant cannot now be heard to complain as the amount of imputed income it yields is significantly higher than the $700 per month rental value defendant's own testimony attached to the home.

■ Finally, defendant attacks as unsupported the trial court's finding that defendant's monthly expenses were between $1300 and $1350. We are constrained to agree with defendant. There simply was no evidence introduced on defendant's expenses. Consequently, the trial court's finding is clearly erroneous. V.R.C.P. 52(a); see *DeGrace v. DeGrace*, 147 Vt. 466, 469–70, 520 A.2d 987, 990 (1986) (trial court's finding on plaintiff's ability to pay not supported by the record). By making a finding on defendant's expenses, the trial court demonstrated that it considered defendant's expenses in determining his ability to pay and in awarding maintenance. Consequently, the maintenance award must be reversed and remanded for receipt of evidence on the issue of defendant's expenses.

### III.

Defendant contests two aspects of the trial court's marital property division. Defendant first argues that the trial court abused its discretion in its distribution of the homeplace belonging to the parties. The court found its value to be $125,000. It further found that both parties contributed to the mortgages and improvements during the twenty-two years of the marriage and concluded that the homeplace should be divided equally, even though plaintiff contributed the original marital home and plaintiff's mother gave the two-acre lot upon which the home at issue stood. The court awarded the homeplace to plaintiff, subject to a mortgage interest to defendant payable upon the sale of the house, the death of plaintiff or at the end of five years, whichever should first occur. Interest at the rate of 10% was to accumulate on his mortgage award until payment.

■■ As we have repeatedly noted, the trial court has wide discretion in distributing property in a divorce action, and its

award will not be disturbed on appeal unless that discretion was abused, withheld, or exercised on untenable grounds. *Ellis v. Ellis*, 150 Vt. 650, 650, 552 A.2d 406, 407 (1988) (mem.); *Lalumiere v. Lalumiere*, 149 Vt. 469, 471, 544 A.2d 1170, 1172 (1988). In fashioning this award, the court noted that plaintiff was undergoing chemotherapy for what might be terminal cancer and that she needed a stable homeplace during her struggle with cancer. The division and assignment of the homeplace addressed plaintiff's needs and preserved defendant's interest. We find no abuse or withholding of discretion.

 Defendant also argues that the trial court's award of the entire estate of plaintiff's deceased mother to plaintiff was an abuse of discretion. Defendant contends that this award was made solely because plaintiff was the source of the asset, and that consideration by the court of only a single factor constituted an abuse of discretion. While we agree with defendant that such limited consideration would be an abuse of discretion, see *Colm v. Colm*, 137 Vt. 487, 491, 407 A.2d 184, 186 (1979), we cannot accept his contention that such limited consideration was present here. The trial court expressly stated that "with regard to the property settlement, we have attempted to balance the equities, we have awarded Mrs. Scott her family property because of her minimal income, her inability to work and in lieu of a higher maintenance award." The trial court's findings and opinion reflect this depth of consideration, and, accordingly, defendant's argument fails.

 However, given our vacation of the maintenance award, the property division must also be vacated to allow the trial court to revise it, if necessary, when the trial court readdresses the maintenance award. See *Downs v. Downs*, 154 Vt. 161, 168, 574 A.2d 156, 159 (1990); *DeGrace*, 147 Vt. at 470, 520 A.2d at 990.

*Reversed and remanded.*

**Morse, J.,** dissenting. I disagree that the finding that the parties lived apart for at least six months was clearly erroneous. V.R.C.P. 52(a). In this day and age, setting the law of divorce against this plaintiff by a parsimonious construction of "living apart" is, in my opinion, unwarranted.

There was substantial evidence that the only reasons the parties remained under one roof were financial, not the pursuit of conjugal relations. Very little "affection, solace, comfort, companionship, society and assistance" can be gleaned from this record. The Court does say, however, that the evidence supports the conclusion that "resumption of marital relations was not reasonably possible." If the marriage was not reasonably likely to be resumed, the evidence must support the conclusion that for all practical purposes the marriage had ended.

I also fail to understand why this Court does not simply enter a judgment for divorce effective immediately rather than remand for "such a determination." Is there a genuine issue of material fact about a bona fide separation since September 1989? I can discern no functional reason for a remand; perhaps there is a ceremonial one.

I also disagree that the trial court's erroneous finding of the amount of defendant's monthly expenses requires reversal and a remand for a new trial. If defendant introduced no evidence on his monthly expenses, the finding is extraneous to the decision and of no moment.

I would affirm.