VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.    22-AP-179

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

DECEMBER TERM,   2022

Kate Hendrickson v. Nathaniel Natoli*      }      APPEALED FROM:
                                           }      Superior Court, Addison Unit,
                                           }      Family Division
                                           }      CASE NO. 22-FA-01590
                                                  Trial Judge: Kathryn A.C. Kennedy,
                                                  Specially Assigned

In the above-entitled cause, the Clerk will enter:

Defendant appeals a final relief-from-abuse (RFA) order entered by the family division. We affirm.

Plaintiff and defendant were formerly in a relationship and have a five-year-old son together.  In June 2022, plaintiff filed an RFA complaint alleging that defendant had attempted to cause or caused physical harm to her during a custody exchange.

At the final hearing, plaintiff testified that over the preceding year, defendant had initiated unwanted physical contact numerous times during custody exchanges, touching her waist, her back, her hand, and her shoulders.  One time, she alleged he pushed her aside with both hands, and another time he hit her face.

During the most recent incident, on June 7, 2022, plaintiff described that she arrived at the custody exchange location with the parties' son and defendant came to the door of her vehicle.  Plaintiff remained seated in the vehicle, leaned back, and unbuckled her son's car seat. She pushed a button that opened her son's door.  Defendant then reached into the car and shoved a piece of cloth in her face, saying that he found a dress of hers and wanted to return it to her. Plaintiff testified, "[h]e hit me hard with [the dress].  And then he held it there and rubbed it around on my face as he was pressing it against my face."  She testified that the cloth covered

her nose and mouth and that defendant pressed it hard against her face, causing her pain.  She stated that she felt cornered in the vehicle and asked him to stop, which he eventually did.  The parties' son was in the car during this incident.  Plaintiff testified that she feared further physical abuse from defendant.

Plaintiff's romantic partner, J.B., testified that on June 8, one day after the custody exchange described by plaintiff, defendant came to plaintiff's house while J.B. was there.  Defendant told J.B. that he had come to get his son's shoes.  Defendant refused to wait outside, entered the home, and took the shoes.  J.B. told defendant he could leave.  Defendant then shoved J.B. and physically attacked him, repeatedly shoving him against the stairs.  J.B. testified that he suffered bruises and cuts on his back, bruising on his arm and elbow, and wounds on his hand where defendant bit him, for which he later sought medical treatment.

Defendant testified on his own behalf.  He stated that during the custody exchange on June 7, he saw an item fall out of plaintiff's car when she opened the door.  He asked her where to put it and she said, "just put it here," and he did.  He denied that he ever trespassed on her property or that he had any interaction with J.B.  He stated that plaintiff had filed a previous RFA complaint based on similar allegations that was denied.

Defendant then called a tenant of his, A.B.  She testified that she had accompanied him to a custody exchange in April 2022, during which he got the parties' son and the son's belongings out of his car and helped the son into plaintiff's vehicle.  She described the exchange as "short and sweet."  She agreed when asked by defendant that it was possible that something could fall out of the car during that process and that defendant had to partially enter plaintiff's car to place the child in his car seat.  She did not indicate that she witnessed the June 2022 exchange.

After A.B. testified, the court stated that the evidence was closed and went into recess, after which it returned and made findings on the record.  The court found that plaintiff had proven by a preponderance of the evidence that defendant had physically abused her and that there was a danger of further abuse.  The court issued a final RFA order directing defendant to stay 300 feet away from plaintiff.  The court ordered the parties to arrange for a third party to facilitate custody exchanges until they were able to arrange exchanges through a visitation center.

On appeal, defendant claims that the order should be reversed because he did not have adequate time to present testimony.  Vermont Rule of Evidence 611(a) generally directs the court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence" to make the "presentation orderly and effective," to "avoid needless consumption of time," and to "protect witnesses from harassment or undue embarrassment."  Although this rule encompasses the authority "to set reasonable limits on the consumption of time in examining witnesses," any "limits must be reasonable and sufficiently flexible to ensure that important evidence is not excluded due to artificial time constraints."  Varnum v. Varnum, 155 Vt. 376, 390 (1990).  However, in abuse-prevention cases these considerations are tempered by the goal of the statute, which is "to provide immediate relief to victims of domestic violence."

Rapp v. Dimino, 162 Vt. 1, 4 (1993). "This goal is accomplished in part by providing inexpensive and uncomplicated proceedings . . . without the need for counsel, advance pleadings, or a full-blown evidentiary hearing." Id.

The record shows that defendant had a full and fair opportunity to present a defense during the final hearing. He cross-examined plaintiff and J.B. after each of them testified. When it was his turn to present evidence, he recalled plaintiff to the stand to ask her a question. He testified for several minutes on his own behalf. He then stated that he wanted to call his witness and proceeded to question her for several minutes. After she finished testifying, the court stated that the evidence was closed. Defendant did not object at that point or ask the court for more time.

Defendant asserts in his reply brief that he did object earlier in the hearing. However, the objection to which he refers had nothing to do with the court's decision to close the evidence. During plaintiff's direct testimony, she stated that the sheriff successfully served defendant with a notice against trespass. Defendant objected, stating "I did not. She said successful—," at which point the court interrupted him and indicated that he would have an opportunity to respond later. Defendant subsequently had the opportunity to cross-examine plaintiff about this statement and to present his own testimony but did not do so. His objection to plaintiff's statement about service cannot be fairly construed as a request for more time. More importantly, he does not indicate what evidence he would have presented if he had more time, or how it would have impacted the outcome of the case. Under these circumstances, we see no reason to disturb the decision below.

Defendant also claims that plaintiff made up her abuse claim to interfere with his parent-child contact and that her allegations were untrue. "In matters of personal relations, such as abuse prevention, the family court is in a unique position to assess the credibility of witnesses and weigh the strength of evidence at hearing." Raynes v. Rogers, 2008 VT 52, ¶ 9, 183 Vt. 513. We will therefore affirm a family court's decision to grant a relief-from-abuse order unless the court abused its discretion, "upholding its findings if supported by the evidence and its conclusions if supported by the findings." Id.

Plaintiff's testimony supports the court's finding that defendant abused plaintiff by shoving a cloth in her face and rubbing it against her skin, causing her pain and fear. See 15 V.S.A. § 1101(1)(A) (defining abuse as occurrence of one or more of list of specific acts including "attempting to cause or causing physical harm"). The evidence also supports the finding that there was a danger of further abuse: plaintiff testified that defendant had repeatedly initiated unwanted physical contact despite her asking him to stop and that his behavior appeared to be escalating. This was corroborated by J.B.'s testimony that defendant went to plaintiff's house the following day, entered the home uninvited, and then attacked J.B. Although defendant denies that any of these events occurred, the court was not required to believe his version if it found plaintiff and J.B. to be more credible. His disagreement with the court's conclusions does not constitute an abuse of discretion. See, e.g., Meyncke v. Meyncke, 2009 VT 84, ¶ 15, 186 Vt.

571 (mem.) (explaining that arguments which amount to nothing more than disagreement with court's reasoning and conclusion do not make out a case for abuse of discretion).

Affirmed.

BY THE COURT:

Harold E. Eaton, Jr., Associate Justice

Karen R. Carroll, Associate Justice

Nancy J. Waples, Associate Justice